IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:15-CR-87-BO

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | **O R D E R** |
| | ) | |
| ANGEL ANTHONY ROMERO | ) | |

This matter is before the Court on defendant Angel Anthony Romero's motion to dismiss the indictment for failure to state an offense. [DE 21]. The government has responded [DE 22] and the matter is ripe for ruling. For the following reasons, defendant's motion is GRANTED and the indictment is DISMISSED.

## BACKGROUND

On December 11, 2014, Mr. Romero pled guilty in Wake County District Court to breaking and/or entering in violation of N.C. Gen. Stat. § 14–54(A) and felony larceny in violation of N.C. Gen. Stat. § 14–72(A). [DE 21-1]. Both are defined as Class H felonies under North Carolina law. [*Id.*] The district court determined that defendant had a prior record level of I, found no aggravating or mitigating factors, and ordered that the offenses be consolidated for judgment. [*Id.*] the court then imposed a sentence within the presumptive range authorized by N.C. Gen. Stat § 15A–1340.17(c), ordering that Mr. Romero "be imprisoned for a minimum term of 5 months [and] for a maximum of 15 months in the custody of" the North Carolina Division of Adult Corrections. [*Id.*] Mr. Romero was given credit for 25 days spent in confinement, and the court suspended his sentence in lieu of 18 months of supervised probation. [*Id.*]

On March 18, 2015, a grand jury sitting in the Eastern District of North Carolina returned a true bill of indictment charging Mr. Romero with knowingly possessing a firearm and

ammunition "having been previously convicted of a crime punishable by a term of imprisonment exceeding one (1) year," in violation of 18 U.S.C. §§ 922(g)(1) and 924. [DE 1]. The predicate crimes underlying the charge are the aforementioned North Carolina state convictions. On April 27, 2015, defendant filed the instant motion seeking dismissal of the indictment on the grounds that his prior North Carolina convictions were not for crimes punishable by imprisonment for a term exceeding one year as required by 18 U.S.C. § 922(g)(1). [DE 21].

## DISCUSSION

I. North Carolina Structured Sentencing and the Justice Reinvestment Act of 2011

North Carolina uses a structured sentencing scheme to determine each defendant's sentence. *See* N.C. Gen. Stat. § 15A-1340.10 *et seq.*. The scheme employs a grid in which the horizontal rows represent classes of felonies (classes A through I) and the vertical columns represent prior record levels based on a defendant's criminal history (levels I through VI). *Id.* § 15A-1340.17(c). Within each box on the grid are three ranges of minimum sentences: presumptive, mitigated, and aggravated. *Id.* A court may only choose a sentence within the mitigated range after making written findings in fact thereof and may only choose a sentence with the aggravated range if a jury determines that an aggravating factor is present. *Id.* § 15A-1340.16(a)(1), (c). After determining a defendant's minimum sentence via the grid, the court must impose the corresponding maximum sentence listed in § 15A-1340.17(d) for class F through I felonies or (e) for Class B1 through E felonies.

The Justice Reinvestment Act of 2011 (JRA or Act), which became effective on December 1, 2011, significantly changed North Carolina's structured sentencing scheme. 2011 N.C. Sess. Laws 192. On that date, all North Carolina felony maximum sentences were modified to include a mandatory nine month term of post-release supervision. *See* Articles 81D and 84A

of the North Carolina Criminal Procedure Act, N.C. Gen. Stat. §§15A-1340, *et seq.*; 15A-1368 *et seq.*. The nine month period cannot be served in prison as punishment for the crime of conviction. The JRA provides that "a prisoner to whom [post-release supervision] applies *shall* be released from prison for post-release supervision on the date equivalent to his maximum imposed prison term . . . less nine months in the case of Class F through I felons . . . ." § 15A-1368.2(a)( emphasis added). Moreover, "[a] prisoner shall not refuse post-release supervision." § 15A-1368.2(b). Despite the fact that this period must be imposed after release from prison, the "maximum sentence" is expressed on the structured sentencing chart as a single number of months which includes the nine month post-release supervisory period. The chart does not distinguish between the term of imprisonment and the supervisory period.

II. <u>Federal Definition of a Crime Punishable by More than One Year</u>

In *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011), the Fourth Circuit "changed the way [it] determines whether prior convictions for certain lower-level North Carolina felonies are punishable by more than one year in prison." *Miller v. United States*, 735 F.3d 141, 145 (4th Cir. 2013). Before *Simmons* was decided, courts looked at "the maximum *aggravated* sentence that could be imposed for that crime upon a defendant with the worst possible criminal history." *United States v. Harp*, 406 F.3d 242, 246 (4th Cir. 2005) (emphasis in original). Following *Simmons*, courts are required "to look at how much prison time the defendant was exposed to given his own criminal history at the time he was sentenced and any aggravating factors that were actually alleged against him." *Miller*, 735 F.3d at 146.

The Fourth Circuit based its holding on *Carachuri-Rosendo v. Holder*, 560 U.S. 563 (2010), in which the Supreme Court invalidated the "hypothetical approach" to classifying a defendant's prior conviction as an aggravated felony for purposes of the Immigration and

3

Nationality Act. Instead of looking "to what might have or could have been charged," *Carachuri-Rosendo* requires courts to determine whether the defendant was "*actually convicted* of a crime that is itself punishable as a felony under federal law," rather than whether he hypothetically could have received felony treatment." *Id.* at 582 (emphasis in original). Following the reasoning in *Carachuri-Rosendo*, the Fourth Circuit held that "the 'mere possibility that [Simmons's] conduct, coupled with facts outside the record of conviction, could have authorized' a conviction of a crime punishable by more than one year's imprisonment cannot and does not demonstrate that Simmons was actually convicted of such a crime." *Simmons*, 649 at 244–45 (quoting *Carachuri-Rosendo*, 560 U.S at 582). Since *Simmons* was decided, the Fourth Circuit has reiterated that "*Simmons*, and *Carachuri* before it, teach that we may not measure a defendant's maximum punishment based on a hypothetical charge, a hypothetical criminal history, or other 'facts outside the record of conviction.'" *United States v. Valdovinos*, 760 F.3d 322, 327 (quoting *Simmons*, 649 F.3d at 244); *see also United States v. Kerr*, 37 F.3d 333, 343 (4th Cir. 2013); *United States v. Bercian-Flores*, ---F.3d---, 2015 WL 2239325 at *6–7 (4th Cir. 2015).

III. Application to Mr. Romero's Case

It is clear that *Simmons* precludes consideration of hypothetical charges and hypothetical criminal histories when determining a maximum sentence. *See, e.g., Valdovinos*, 760 F.3d at 327. It follows, therefore, that *Simmons* also precludes consideration of hypothetical future violations of post-release supervision when determining the maximum sentence to which a defendant was exposed. The wording of the statutory scheme and significant legal process and protections afforded a defendant in the revocation process demonstrate that state courts lack legal authority to impose what North Carolina law refers to as the "maximum" sentence at the time a

defendant is sentenced under the JRA. The reality is that the sentencing judge can only impose the "maximum" sentence less the mandatory nine month post-release supervisory period.

The government makes much of the fact that determining a maximum sentence merely requires application of the *Simmons* "test," in which a court examines "the offense class, the offender's prior record level, and the applicability of the aggravated sentencing range." *Simmons*, 649 F.3d at 247 n.9. The government fails to acknowledge, however, that the Fourth Circuit set forth this test before the JRA became effective. Moreover, the heart of *Simmons* is not the rigid application of a simple test. The heart of *Simmons*, and *Carachuri-Rosendo* before it, is that a federal court may not consider hypothetical factors in determining a maximum sentence. To apply the test without considering whether its application comports with the rationale behind it is a simplistic, short-sighted approach. The only way Mr. Romero could have been exposed to more than six months' imprisonment is if he violated his post-release supervision. Making the assumption that he would involves consideration of a hypothetical scenario, which belies the rationale of *Simmons*.

The government also argues that the only two circuit courts to address the treatment of mandatory suspended sentences have held that the maximum penalty is the maximum prison sentence the defendant could receive before suspension. *United States v. Caicedo-Cuero*, 312 F.3d 697, 704–05 (5th Cir. 2002); *United States v. Arellano-Torres*, 303 F.3d 1173, 1178–79 (9th Cir. 2002). The Court does not find these cases persuasive. Unlike the post-release supervision at issue in the instant case, these cases involved mandatory sentencing provisions only applicable to first-time offenders, rather than all defendants. Moreover, both cases were decided long before the Supreme Court's decision in *Carachuri-Rosendo*.

5

Case 5:15-cr-00087-BO   Document 24   Filed 06/12/15   Page 5 of 7

Mr. Romero's prior conviction occurred in 2014, after the JRA became effective. He received a sentence of five to fifteen months' imprisonment, which was suspended in lieu of eighteen months' probation. The fifteen-month maximum sentence included the mandatory nine months of post-release supervision. At the time Mr. Romero was sentenced, the maximum prison term to which he was exposed was six months. There are no circumstances under which Mr. Romero could have lawfully been made to serve a term of imprisonment greater than six months at the time he was sentenced. To hold that the maximum sentence to which he was exposed was fifteen months would presume a hypothetical violation of post-release supervision. Such a hypothetical scenario represents precisely the logic forbidden by the Fourth Circuit in *Simmons* and the Supreme Court in *Carachuri-Rosendo*. Consequently, his conviction does not qualify as a predicate felony for the purposes of 18 U.S.C. § 922(g)(1).

Because Mr. Romero's prior conviction was not punishable by more than one year in prison, the government has failed to state an offense pursuant to Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure, and the indictment charging Mr. Romero must be dismissed.[1]

---

[1] The federal courts in this state have come to different conclusions on this very issue, and it is currently pending before the Fourth Circuit. *See, e.g., United States v. Davis*, No. 5:14-CR-107-BR (E.D.N.C.) (rejecting government's position), *appeal pending at* No. 15-4208 (4th Cir.); *United States v. Barlow*, No. 1:14-CR-182-NCT-1 (M.D.N.C.) (accepting government's position), *appeal pending at* No. 15-4114 (4th Cir.).

6
Case 5:15-cr-00087-BO   Document 24   Filed 06/12/15   Page 6 of 7

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss [DE 21] is GRANTED, and the indictment in this case is DISMISSED. The defendant is ordered to be released from federal custody forthwith. The Clerk is DIRECTED to close the case.

SO ORDERED, this __12__ day of June, 2015.

*Terrence W. Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE